**TURNER et al. v. GERMANY et al.**

No. 4934.

Court of Civil Appeals of Texas.
Texarkana.

April 2, 1936.

Rehearing Denied April 30, 1936.

Bramlette & Levy and Clyde F. Winn, all of Longview, Robertson, Robertson & Payne, and J. L. Lancaster, Jr., all of Dallas, and T. L. Holden, of Washington D. C., for appellants.

Wynne & Wynne, of Longview, and Prentice Wilson, of Dallas, for appellees.

SELLERS, Justice.

Jones Moore in August, 1903, purchased a 160-acre tract of land in Gregg county, which had been patented as the Jefferson Moseley survey. This land was the community property of Jones Moore and his wife, and at the time of Jones Moore's death in November, 1911, was their homestead. Jones Moore died intestate in 1911, and there was no administration upon his estate and no necessity for any. Susan Moore never qualified as community survivor of their estate, but she with certain minor children of her marriage to Jones Moore continued to live on the property until her death in 1917. There appears in the record the following agreement: "It is agreed that the following children were all the children of Jones Moore and wife, Susan Moore: Boston Moore, who is living; Jonas Moore, who is living; Lilly Moore Bell, who is living; Grammer Moore, who is living; Pearl Moore Bell, who died in 1918 leaving the four children, C. B. Bell, Susie Bell Jones, who married James Jones, Annie Crockett, who married Lewis Crockett, and Jim Bell; Para Lee Moore Williams, who died in the year 1910 leaving surviving one child named Emanuel Williams, sometimes called Erastus; Mossy Moore, who died in 1906 without issue; Elzella Moore, who died without issue in 1912 or 1913; Watson Moore, who died in 1910 without issue; August Moore, who died in 1912 or 1913 without issue."

On December 3, 1915, the following deed was purported to be executed:

"The State of Texas, County of Gregg.

"Know All Men by These Presents:

"That we—Susan Moore, surviving wife of Jones Moore, deceased, Boston Moore, Jonas Moore, Lilly Moore and Mossy Moore, Grammer Moore, sole children and heirs at law of Jones Moore, deceased, of the County of Gregg, State of Texas, for and in consideration of One Hundred Sixty Six Dollars Sixty-Six and Two thirds cents, Dollars, to us paid by Albert Albright, the receipt whereof is hereby acknowledged, as follows:

"Have Granted, Sold and conveyed, and by these presents do Grant, Sell and Convey, unto the said Albert Albright, of the County of Gregg, State of Texas, all that certain tract or parcel of land situated and described as follows:

"About nine miles West from the town of Longview, Texas, being a part of the Jefferson Moseley Survey, Beginning in the center of the Texas & Pacific Railroad track; Thence North 250 varas to a stake; Thence West 580 vrs to a stake; Thence South 145 vrs to a stake in the center of said Railroad track; Thence East with said Railroad track to the place of beginning, containing in all 20⅓ acres of land, more or less.

"To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said Albert Albright his heirs and assigns forever; And we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Albert Albright his heirs and assigns, against every person whomsover lawfully claiming, or to claim the same, or any part thereof.

"Witness our hands at Longview this 3rd day of Dec. A. D. 1915.

"Susan Moore
"Boston Moore
"Jonas Moore
"Lilly Moore
"Mossy Moore
"Grammer Moore"

The deed was recorded January 17, 1916. Albert Albright, who, it appears, took the title in trust for John A. Albright, conveyed this tract of land in 1917 to John Albright, and the deed was filed for record January 19, 1921. John A. Albright afterwards conveyed it to Elbert Hoyt on November 22, 1928. On February 25, 1932,

Elbert Hoyt executed an oil and gas lease to E. B. Germany, and Germany assigned the lease to the Pilot Oil Company on June 14, 1932.

This suit involves the 20⅓ acres set out in the above deed as well as the deed itself and the rights of all parties thereunder. This suit is by E. B. Germany, Elbert Hoyt, and Pilot Oil Company against the heirs of Jones and Susan Moore and those claiming under them to recover the entire 20⅓ acres of land described in the deed from Susan Moore to Albert Albright, above set out. The heirs of Jones Moore, and those claiming under them, are claiming a 35⁄96 undivided interest in the 20⅓ acres.

The case was tried to a jury, and at the close of the evidence the trial court instructed a verdict for the plaintiffs for the 20⅓ acres, and in accordance therewith entered judgment for them for title to all the land involved. From this judgment defendants have appealed.

There appears no issue of fact for decision by the jury. The parties have presented and argued the case on appeal on the theory that the evidence raised and presented matters only of pure law for decision.

On the trial the deed to the 20⅓ acres from Susan Moore and others to Albert Albright was attacked by affidavits of forgery of the names of Jonas Moore, Lilly Moore Bell, Mossy Moore, and Grammer Moore. The affidavits were not controverted, and it was established on the trial that the deed was a forgery as to the parties, Jonas Moore, Lilly Moore Bell, Mossy Moore, and Grammer Moore. Susan Moore, the wife, and Boston Moore, a child of Susan and Jones Moore, deceased, did sign the deed. The evidence is without dispute that Jones Moore at his death left no community debts, nor unpaid community taxes on the lands. And the evidence conclusively establishes that the plaintiffs in error never conveyed nor made sale of their interest in the 20⅓ acres, which amounts to 35⁄96 undivided interest therein.

The assignment of error of plaintiffs in error is that there was error in directing a verdict in favor of the defendants in error for the recovery of the title and possession of the entire 20⅓ acres of land. It is urged that the plaintiffs in error were entitled, as a matter of pure law, to an instructed verdict, and judgment accordingly, for 35⁄96 interest in the 20⅓ acres. The defendants in error were entitled to the remaining 61⁄96 interest in the 20⅓ acres.

Determining, as we do, as a matter of pure law, the point thus presented by the assignment of error, established by written instruments and by evidence about which there appears no substantial controversy, the plaintiffs in error have conclusively shown title to 35⁄96 undivided interest, and that they have never made sale nor conveyance of such interest. That adverse possession by limitation under the five or the ten years' statute was not effective, and did not prevail. It is well settled law that a forged instrument is void and inoperative to those not signing. Alamo Trust Co. v. Cunningham (Tex.Civ.App.) 203 S.W. 413. And forged instruments gain no validity from being recorded. 66 C.J. § 997, p. 1153. Neither does a purchaser from a grantee holding under a forged deed acquire any title as an innocent purchaser. Pure Oil Co. v. Swindall (Tex.Com.App.) 58 S.W.(2d) 7, 10; Abee v. Bargas (Tex.Civ.App.) 65 S.W. 489; 66 C.J. § 910, p. 1095. The legal effect of the evidence stated would, therefore, entitle the plaintiff in error to recover the 35⁄96 undivided interest in the 20⅓ acres. This conclusion, however, must in the particular circumstances depend, as contended by the defendants in error, upon whether or not estoppel and the doctrine of equitable partition are applicable, and can be invoked and made to prevail in favor of defendants in error as relates to the entire 20⅓ acres.

We do not find in the evidence such conduct as to afford ground to invoke or claim the benefit of estoppel in the contention that plaintiffs in error sat idly by while the defendants in error placed valuable improvements on the land. The estoppel was founded, as alleged in the petition of the defendants in error, "in reliance upon said deed," meaning the deed of December, 1915, the defendants in error made improvements upon and spent large sums of money on the property, and the plaintiffs in error "sat idly by and permitted the same to be done." Quoting the rule from Holland v. Blanchard (Tex. Civ.App.) 262 S.W. 97, at page 101: "Silence or failure to assert title to land, while it is being adversely claimed, conveyed, or occupied, is not of itself sufficient to create an estoppel. The circumstances

must show that an opportunity to speak was afforded with a full knowledge of the facts; and it must further appear that the adverse party, that is the party claiming the benefit of the estoppel, was ignorant of the truth and was misled into doing that which he would not have done but for such silence and standing by of the party sought to be enjoined."

Elbert Hoyt had actual knowledge that the plaintiffs in error were the heirs and grantees of the heirs of Jones Moore, deceased. And the recitals in the deed mentioned charged, as a matter of law, each, the Pilot Oil Company and E. B. Germany, with notice and knowledge of the same. And the particular plaintiffs in error never, as shown, recognized the exclusive title of Albert Albright nor Elbert Hoyt. There was, as shown, actual joint occupancy and use of the premises.

In certain leases and mineral deeds, respectively, as shown in the evidence, executed by plaintiffs in error, along with others to W. H. Winn and others, there were certain clauses by which the defendants in error claim the plaintiffs in error are estopped from asserting any interest in the 20⅓ acres. The mineral lease to W. H. Winn was made on September 16, 1930, and the mineral deeds were made thereafter. The lease and mineral deeds described the land, by field notes, not as 20⅓ acres, but, as set out in the original deed to Jones Moore in August, 1901, as "containing 160 acres more or less." These several leases and mineral deeds especially described the land by metes and bounds specifically set forth. The last call of the description reads: "Thence (giving course and distance) to place of beginning, containing 160 acres more or less, save and except 20 acres heretofore conveyed to A. E. Albright by deed of record in Vol. 31, page 145, in Deed Records of Gregg County, Texas. The amount of land herein leased is 140 acres more or less." Similar language was in the clauses contained in all the deeds and leases offered in evidence.

■ In our opinion, the defendants in error are not entitled to predicate an estoppel against plaintiffs in error by the clauses in the deeds for the principal reason that they were not parties or privies to the instruments in which the language complained of issued. None of the leases and mineral deeds, containing the clause above stated, and similar clauses, were made to any of the defendants in error, either to Elbert Hoyt, E. B. Germany, Pilot Oil Company, or to W. L. Pickens, or to any of their predecessors. Elbert Hoyt acquired his interest in the 20⅓ acres direct from Albright in November, 1928, and he conveyed direct to E. B. Germany in February, 1932. In the case of Williams v. Chandler, 25 Tex. 4, 11, it is held: "The doctrine of estoppels, invoked by the plaintiff's counsel, manifestly has no application to his case. Recitals in deeds operate as estoppels only between the parties to the deed and privies. They do not operate a conclusion or estoppels in favor of a stranger to the instrument, any more than does a record operate an estoppel in favor of or against one who was no party to the record. Nothing is better settled than that a special averment or recital in a deed or instrument under seal is conclusive between the parties and privies, against the party by whom it is made, in the course of the transaction in which it is given. But this rule must be taken with the qualification that the estoppel by an admission under seal only arises in suits founded upon the instrument which contains the recital, or growing out of the transaction in which it is given, and not in other and collateral controversies, even between the same parties." Further, in Devlin on Real Estate, § 1279, p. 2384, "The general rule is that only parties and privies are bound by an estoppel." 16 Cyc. p. 771; 21 C.J. p. 1108.

■ A clear reason also affirmatively appears in the record, that when defendant in error introduced in evidence the instruments containing such clauses they limited them to show common source and to show that the heirs of Jones Moore appropriated the 115 acres south of the railroad and made sales thereunder. Having limited such evidence to such purposes would seemingly preclude the same from being considered for any other purpose. Mr. W. L. Pickens testified that in purchasing his interest he did not rely upon or even check the expression in the deeds or leases of "except the 20⅓ acres conveyed to A. E. Albright," but wholly on the judgment obtained in another case of Hoyt v. Albright. And the evidence does not reflect actual reliance upon the clauses by any defendant in error.

■ A further consideration of the clauses, if need be, fully impresses the belief, and leads to the conclusion that the words "save and except," as used, were

used solely for descriptive purposes and exception. The clause in each instrument was evidently inserted for the purpose only of further identifying the acreage conveyed by excepting from the operation of the conveyance the certain tract of 20 acres, referred to, and were merely additional words of description. As held, words of "except" and "save and except" immediately following the words designating the acreage sold are customarily employed as words of exception of the land excepted or retained. Estoppel based on these recitals may not, therefore, be necessarily founded in this case. 14 Tex.Jur. § 228, p. 1022. Quoting, as of application, from 16 Cyc. 701: "The doctrine of estoppel does not extend to mere descriptive matter or statements or recitals which are immaterial and not contractual or essential to the purpose of the instrument. Thus, the description in a deed of lands excepted from the conveyance as having been conveyed to another does not estop the grantor, nor one to whom he shall convey the excepted lands from alleging that no such conveyance as recited had been given." It was conclusively shown as a fact that as to Lilly Moore, Jonas Moore, C. B. Bell, and the other heirs, except Susan Moore, the wife, and Boston Moore, "no such conveyance as recited had been given" by them. In the face of this fact to hold under the circumstances that the mere language of the clauses, unattended by other active conduct, is sufficient to invoke ratification as working an estoppel, would be holding that forgery of the deed of 1915, as to Lilly, Jonas, Grammer Moore, and others, was capable of ratification. In the case by the Commission of Appeals of Neal v. Pickett, 280 S.W. 748, 750, it was stated and firmly declared: "Forgery presents an instance where the owner of the land, or his privies, are wholly absent, and the noneffect is lacking ab initio; there is no possible ground for implications, supplementary consent, waiver, estoppel, etc., to supply operative force." All the cases holding forgery is not capable of being ratified place the doctrine upon the ground of public policy. The case of Humble Oil & Refining Co. v. Clark (Tex.Com.App.) 87 S.W.(2d) 471, is in no wise to the contrary of the above view. That case expressly confines and predicates the holding that "lawful terms of an instrument that is void," as distinguished from matters merely voidable, are subject to be made valid by ratification or adoption.

A question forcibly presented for determination is the doctrine of equitable partition invoked by the defendants in error. The doctrine is sought to be founded entirely on the deed of 1915, hereinbefore set out in full, purporting to be made by Susan Moore and others to Albert Albright. The rule of equitable partition between cotenants is ably stated in the case of Heller v. Heller, 114 Tex. 401, 269 S.W. 771, by the Commission of Appeals, and we shall not restate the principle here, but will content ourselves with a reference to this case as to the rules applicable to such a method of partition. As we understand the rule announced in the above authority, it is where one cotenant by his deed conveys to a stranger a distinct and specific portion of the common property by metes and bounds a court of equity, to preserve property rights, will set aside to the purchaser the portion described in his deed, if possible without injury to the remaining cotenants. 47 C.J. § 538, p. 486. Where, in the matter of equitable partition, there has been "set aside to the purchaser the entire portion of the land described in his deed," it will be found in each instance that the deed of the conveying cotenant purported to convey the entire estate or whole title to a specific portion of the land by metes and bounds. In the sale by a cotenant of simply an undivided interest in the distinct portion, the purchaser takes such proportionate interest, and he becomes merely a cotenant with the others. 62 C.J. § 231, p. 550; First Nat. Bank v. Brown (Tex.Com.App.) 15 S. W.(2d) 563. It follows that the doctrine of equitable partition, in order to preserve property rights, may not be absolutely and at all events invoked where a cotenant by his deed purports to convey only his undivided interest in a specific portion of the common property.

In the instant case there are no particular circumstances such as to justify awarding defendants in error equitable relief in awarding to them all the 20⅓ acres and shifting the interests of the plaintiffs in error to some other portion of the 160-acre tract of which Jones Moore died possessed, if any portion of the 160 acres still remains undisposed of. The deed of December, 1915, hereinbefore set out, under which the defendants in error claim, shows that the purpose of the grantors was to carve out and convey a specific portion of the common property consisting of 20⅓ acres. The deed on its face shows that the

grantors were purporting to convey a complete title thereto. The deed on its face further shows that the grantor, Susan Moore, was purporting to convey in the representative character of "surviving wife," and likewise the five children purport to convey only as "sole surviving children and heirs of Jones Moore, deceased." The property was community property of Susan and Jones Moore. Therefore, the deed must be interpreted and understood, as by its language and terms, as intending to pass and convey to the grantee therein, Albert Albright, the individual undivided interest only of Susan Moore, the surviving wife, and each child as heir of the father, Jones Moore, deceased. No greater nor less interest was intended, nor purported to pass to Albert Albright. All the purported grantors were operating, and intending to operate, together and in concert. But in point of fact, the names of four of the children, purporting to be grantors, were not genuinely signed to the deed, but were forged thereto. The deed not being effectual to pass the interests of such four children, the grantee Albright could not legally acquire, and the deed was not effectual to pass, a greater interest than the undivided interest of Susan Moore and Boston Moore, aggregating $^{61}\!/_{96}$ of the 20⅓ acres. Albright and those claiming under him could not predicate or base equitable partition upon a greater interest in the particular 20⅓ acres. Certainly equity will not aid a grantee in such a deed to have and receive a greater interest than the grantors, actually signing, had and purported and intended to convey in the land.

■■■■■ A purchaser under a deed showing the grantors were conveying as heirs is charged with notice and put on inquiry of other heirs. 66 C.J. § 945, p. 1119. And the fact that the deed recites the grantors are "sole children and heirs of Jones Moore, deceased," does not lessen the duty placed upon the grantee to ascertain whether these grantors in the deed are all the heirs of Jones Moore. New York & T. Land Co. v. Hyland, 8 Tex.Civ.App. 601, 28 S.W. 206. There was nothing in the act of Susan and Boston Moore in selling their undivided interest that infringed upon any right of the remaining cotenants. As stated in 11 Tex.Jur. 489, "where one, or any number less than all, of the cotenants conveys the entire property, the effect is merely to transfer to the grantee, or assignee, the rights of the grantors or assignors and thereby to make the grantee or assignee a cotenant in their stead." In Luckel v. Barnsdall Oil Co. (Tex.Civ.App.) 74 S.W.(2d) 127, 131, it was stated: "A purchaser of a specified piece of common property from only one of the joint owners acquires no interest in any of the property except that which is embraced in his deed, and when his purchase is without the consent or subsequent acquiescence of the other owners, he takes only the undivided interest of his grantor." And the uncontroverted evidence showed that the plaintiffs in error have been in the joint use, occupancy, and possession of the land from the date of the deed to Albright down to the year 1933. The intervening rights, titles, and claims of subsequent grantees and assignees under a part of the heirs of Jones Moore, deceased, make it inequitable now to force the plaintiffs in error to shift and take their interest in some other portion of land.

From the record as a whole we are of the opinion that the defendants in error were entitled to recover only a $^{61}\!/_{96}$ interest in the land involved and that the plaintiffs in error were entitled to a $^{35}\!/_{96}$ interest therein.

The judgment will therefore be re-formed so as to allow plaintiffs in error a $^{35}\!/_{96}$ interest in the 20⅓ acres of land, and as so re-formed it will be affirmed.